IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LARRY DEAN THOMAS,                                      CV 04-504-MA

                    Petitioner,                         OPINION AND ORDER

        v.

MICHAEL WASHINGTON,

                    Respondent.

        LISA HAY
        Assistant Federal Public Defender
        101 SW Main Street, Suite 1700
        Portland, OR  97204

                Attorney for Petitioner

        HARDY MEYERS
        Attorney General
        LYNN DAVID LARSEN
        Assistant Attorney General
        Department of Justice
        1162 Court Street NE
        Salem, OR  97301-6313

                Attorneys for Respondent

MARSH, Judge:

Petitioner brings this federal habeas corpus proceeding under 28 U.S.C. § 2254, challenging his conviction for Assault in the First Degree in Multnomah County Circuit Court Case No. 96-03-31835. Resp. Ex. 101. For the reasons set forth below, petitioner's amended habeas corpus petition (#10) is GRANTED.

<u>**BACKGROUND**</u>

On July 8, 1996, following a jury trial in which he appeared *pro se*, petitioner was acquitted of Attempted Murder, but convicted of Assault in the First Degree. Resp. Exs. 103, 104. These charges stemmed from an incident in which petitioner shot a man in the chest. Resp. Ex. 102 at 143. Petitioner was sentenced to 90 months imprisonment, and 36 months of post-prison supervision. Resp. Ex. 101. Petitioner currently is out of custody, and under post-prison supervision.

Attorney Ron Fishback was appointed to represent petitioner in the state prosecution. Petitioner's relationship with Mr. Fishback was tumultuous from the start. On three occasions before trial petitioner requested, and was denied, appointment of new counsel.

On April 10, 1996, petitioner's first motion for new counsel was heard by the Honorable Jerome Cooper. Resp. Ex. 102 at 5. Mr. Fishback moved to withdraw and for substitute counsel due to a "conflict" which he initially declined to discuss. <u>Id</u>. Following a discussion with counsel off the record, Judge Cooper denied the

motion for substitution of counsel, but indicated that the matter would be referred to the presiding criminal judge, William Keys, because "it's serious enough where the presiding criminal judge should be made aware of what's going on." Id. at 6. Judge Cooper also advised petitioner, however, that "you're not going to call the shots on who you get as an attorney based on what I've heard." Id.

On May 2, 1996, the Honorable Marshall Amiton heard petitioner's second motion for new counsel. This time Mr. Fishback deferred to petitioner to explain the conflict. Petitioner expressed dissatisfaction with Mr. Fishback, specifically complaining that he had not delivered various documents to petitioner, had not sought pretrial release for petitioner, and stated to petitioner that he would receive 90-months imprisonment. Resp. Ex. 104 at 2-10. Judge Amiton denied the request for substitute counsel and elicited petitioner's agreement to cooperate with Mr. Fishback. Id. at 11.

Two weeks before trial, on June 27, 1996, petitioner again moved for substitution of counsel. Resp. Ex. 102. The motion was heard by the Honorable William Keys. Mr. Fishback explained that he and petitioner had not "gotten along at least in the sense that when he gets in my face I won't talk to him." Id. at 8. Mr. Fishback indicated that petitioner had "accused [him] of being a

dump truck, being with the district attorney's office, has expressed extreme displeasure with not being released from jail pending trial and, quite frankly, has been quite offensive." Resp. Ex. 102 at 8. Mr. Fishback indicated, however, that he didn't see petitioner's bad behavior as a conflict that would prevent him from representing petitioner. Id.

Judge Keys read to petitioner the indictment, because petitioner was unable to read, and the notice of petitioner's right to counsel. Judge Keys further advised petitioner as follows:

> [T]he judge cannot act as your attorney in the event you give up your right to an attorney or give you legal advice at any stage of your case including the trial. But an attorney can help you decide whether to plead guilty or not guilty, go to trial before a jury or a judge without a jury. This decision depends on many factors, including the facts of the case, the law applicable to the charge, possible defenses, and what the district attorney is willing to recommend to the court. There may be important pretrial motions you should file, requiring knowledge of criminal law and procedure.
>
> But if you choose to go to trial before a jury or a judge without a jury the trial is controlled by certain rules and procedures as well as the rules of evidence, all of which may be difficult for a non-attorney to understand; that if you're convicted an attorney can assist you in making a proper presentation to the court at the time of sentencing.

Resp. Ex. 102 at 12.

Petitioner signed the notice, indicating his understanding of its provisions, but clarified that he was not waiving counsel. Id. at 13-14. Judge Keys then advised petitioner that if he was unable

to work with Mr. Fishback, or if petitioner gave Mr. Fishback "a whole lot of grief" and Mr. Fishback moved to withdraw, petitioner would not be appointed substitute counsel but instead would "end up" representing himself. <u>Id</u>. at 15. Judge Keys reiterated to petitioner, "don't get in such a fight with this guy that you end up representing yourself", "[t]hat would be a terrible mistake." <u>Id</u>.

On July 5, 1996, the scheduled trial date, Mr. Fishback moved for a continuance at petitioner's request. Resp. Ex. 102 at 21. The Honorable Henry Kantor heard the motion. Mr. Fishback sought the continuance in order to interview a witness and locate a gun expert. <u>Id</u>. at 21-22. During the course of the hearing, Mr. Fishback summarized his relationship with petitioner as follows:

> My client has not really been willing to talk to me about his case; rather, has wanted me to get off his case. That's been denied three times. So I'm pretty hampered in that sense.
>
> He won't dress down for a jury trial to civilian clothes. He says he has no interest in doing that and won't. That presents a problem. I'd like to talk with him more about that. I consider that to be negative to his case.

Resp. Ex. 102 at 22-23. Mr. Fishback characterized his relationship with petitioner as having "some kind of communication problem" but not a conflict of interest. <u>Id</u>. at 25. Petitioner agreed to work with counsel if the continuance was granted. <u>Id</u>.

The next Monday morning, July 8, 1996, Mr. Fishback moved to withdraw.  He stated that petitioner had threatened him, and that he felt "very uncomfortable."  Id. at 32.  Mr. Fishback explained:

> Despite the fact we appeared to get along last Friday, I did meet with him Saturday – – I take it as a threat to my safety and I feel ethically – – I really just don't want to represent him, and I seek leave to withdraw.  The case has been investigated – – if the Court allows my motion – – to give the new attorney discovery today.  I don't think it should necessitate a lengthy settlement, in my opinion, given what been done on this case, but that's the situation as I see it, Judge.

Id.  After the prosecutor indicated that he believed petitioner threatened Mr. Fishback in order to force the court to appoint substitute counsel, defendant stated:

> I have put in for three times before this even got this far, Your Honor.  Didn't I, Ron?  I put in way before this got started.  I think about the second time we met – – he never really came – – he never seen me – – you know what I'm saying?  So I put in for a new lawyer – – a new attorney that would come and see me so we could work on my case, and you know what I'm saying?  I mean – – but he can't do nothing at the last moment, you know what I'm saying?
>
> And just say – – okay, you have him a weekend.  I mean we – – we – – we talked and, you know, tried to figure little corners out, but it wasn't nothing there, you know what I'm saying?  So I'd like to get a attorney to – – with me, not against me, you know what I'm saying?  And I've been asking for that for three – – for going on, on the whole case.

Id. at 34-35?

As Judge Kantor was not familiar with defendant's case, he recessed the proceeding to discuss the matter with presiding

criminal judge, Judge Keys.  Id. at 37-38.  Upon his return, Judge

Kantor asked petitioner if he had, in fact, threatened counsel.

Petitioner denied doing so:

> I asked him to resign himself from this case because I
> didn't feel that he – – you know, I done asked him three
> times and I didn't think he – – he still ain't ready for
> this, you know what I'm saying?  I'm just not going to
> just let him put me down the tube like this.  And I feel
> he is.  You guys feel he ain't, but I feel he is.  You
> know what I'm saying?  Because I didn't have lawyers
> before – – even – – I didn't have one say that I had took
> a deal, you know what I'm saying?  I mean – – but – – you
> know, but this is not taking – – this is not worth taking
> a deal, you know what I'm saying?  But I'd rather have
> somebody that can represent me to – – I mean, to where I
> know I'm being represented.  I'm 42 years old.  I'm not
> stupid, you know?  And I know he can't represent me.

> \* \* \* \* \*

> And I'd like to have somebody – – This is the third time
> – – I've been to three different judges on this and they
> keep turning me down.  I don't know why. but I'd like to
> have somebody else.

Id. at 39-40.  The prosecutor then indicated that he had witnessed

petitioner threaten counsel, stating:

> Well, I just – – for the record, I've not been privy to
> most the [sic] conversations, but after Mr. Fishback
> spent about 15 minutes with Mr. Thomas I came back in the
> courtroom and I heard Mr. Thomas getting very angry at
> Mr. Fishback, saying he's selling him down the river,
> it's not a deal, he's not doing his job, and then he said
> things – – he said something about I'll get you a Measure
> 11 sentence from jail.   And there was street talk in
> there that I wasn't sure, and he said it in a very
> aggressive, loud voice, and I actually got scared of what
> the Defendant was going to do at that time.

> I heard Mr. Fishback kind of move back, say what – – you
> know, is that a threat?  What is that?  And he wouldn't

answer the question, and he said something like it's however you want to bite the pill. And I certainly thought it was a threat; I took it as a threat. And I was, frankly, scared for my own safety at that time.

Id. at 40.

Judge Kantor granted the motion to withdraw, concluding that a threat justifying withdrawal of counsel was made. Id. The following colloquy ensued:

THE COURT: Judge Keys made it very clear that he discussed with you, and went over with you what would happen if you caused a problem that would result in a lawyer not being on your case.

THE DEFENDANT: Yes, sir. Sound like I be representing my own self.

THE COURT: That's right. And that's what's going to be happening. He made it clear, he is not going to be reappointing. And so if I – this is what would happen. If I were to send the case back to him to deal with the issue, he would grant the motion to withdraw and send the case back to me within 15 minutes for trial.

If I, on the other hand, simply granted the motion to withdraw and granted the setover * * * he would not allow the setover for more than a few days and he'd send the case out for trial and he would not reappoint you a lawyer.

So what we're going to do today is after I – – I want to make sure you understand this – – we're going to be proceeding today with trial and Mr. Fishback is not going to be your lawyer. I'm going to grant his motion to withdraw and I'm hereby granting it.

Id. at 41-42.

Judge Kantor summarized the "Notice of Right to an Attorney" and advised petitioner of the dangers of proceeding *pro se*. Id. at

42-45.  In response, petitioner requested the assistance of an

inmate legal assistant.  Judge Kantor denied the request.  _Id_. at

45-46.  Petitioner questioned why Judge Keys would not appoint

substitute counsel:

> THE DEFENDANT:  Why – – why he wouldn't let me have
> another lawyer?  This is my third time – – my fourth time
> asking for this.
>
> THE COURT:  I didn't discuss that with Judge Keys.  I
> just – – I just asked him what would happen if I sent the
> case up to him, and he told me, and so it's clear that
> there is no point whatsoever in doing anything but
> proceeding today.
>
> THE DEFENDANT:  He wouldn't let me talk to him?
>
> THE COURT:      No.

_Id_. at 46.

The trial proceeded after Mr. Fishback provided petitioner

with all the trial materials.  _Id_. at 116-17.  Petitioner examined

witnesses for the State, but did not himself testify or put on

witnesses.  Notably, petitioner's memorandum in support of his

appeal from the judgment of the circuit court indicates that Mr.

Fishback returned to the courtroom following the close of the

state's case, to assist petitioner in securing defense witnesses.

Resp. Ex. 105 at 19.

Petitioner directly appealed his conviction, but the Oregon

Court of Appeals affirmed without opinion.  State v. Thomas, 152

Or. App. 414, 960 P.2d 397 (1998), and the Oregon Supreme Court

denied review.  327 Or. 306, 966 P.2d 220 (1998).  Resp. Exs. 105-109.

Petitioner filed for post-conviction relief (PCR) in Umatilla County Circuit Court, which was denied.  Resp. Ex. 122, 123.  The Oregon Court of Appeals affirmed in <u>Thomas v. Hill</u>, 188 Or. App. 766, 73 P.3d 314 (2003), and the Oregon Supreme Court denied review.  336 Or. 17, 77 P.3d 320 (2003).  Resp. Exs. 124-127.

On April 13, 2004, petitioner filed for habeas corpus relief with this court.  Petitioner alleges that (1) the trial court erred in finding that he waived his right to counsel in violation of his Sixth and Fourteenth Amendment rights; (2) the trial court committed various errors resulting in the denial of due process and a fair trial; (3) ineffective assistance of trial counsel; (4) violation of the Americans with Disabilities Act; and (5) prosecutorial misconduct.  In his supporting memorandum petitioner advances an argument in support of ground one only, and does not traverse the remaining grounds.

As to ground one, respondent contends relief should be denied on the merits.  As to all other grounds, respondent argues relief should be denied under 28 U.S.C. § 2248, which directs this court to accept as true respondent's answers to claims not traversed, unless the evidence directs otherwise.  Further, respondent argues petitioner's grounds two through five are procedurally defaulted.

## DISCUSSION

### I.  Procedural Default

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief.  <u>See</u> 28 U.S.C. § 2254(b)(1).  To satisfy the exhaustion requirement, a prisoner must fairly present his federal claims to the state courts.  <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); <u>Casey v. Moore</u>, 386 F.3d 896, 911 (9th Cir. 2004).

To satisfy the exhaustion requirement, federal claims must be presented in a procedural context in which their merits will be considered.  <u>Castille v. Peoples</u>, 489 U.S. 346, 351-52 (1989)(claim not fairly presented when raised for the first time on petition for review to the state Supreme Court).  If a state prisoner fairly presents his federal claims, but the state court denies relief based upon an independent and adequate state rule, federal habeas review is barred absent a showing of cause and prejudice, or that failure to consider the federal claim will result in a miscarriage of justice.  <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002); <u>Cockett v. Ray</u>, 333 F.3d 938, 942 (9th Cir. 2003); <u>Koerner v. Grigas</u>, 328 F.3d 1039, 1046 (9th Cir. 2003).

### A.  Grounds Two, Four and Five

In petitioner's ground two he contends the trial court "committed numerous errors that resulted in an unfair trial" in

violation of his rights under the Due Process Clause of the Fourteenth Amendment. In ground four, petitioner alleges the trial court violated the Americans with Disabilities Act because "no accommodation was made for an illiterate and mentally limited defendant who was required to defend himself at trial." Lastly, in ground five, petitioner alleges violations of his rights under the Sixth and Fourteenth Amendments due to prosecutorial misconduct.

The foregoing grounds for relief are trial errors that must be raised on direct appeal. Petitioner failed to do so. <u>See</u> Resp. Exs. 105, 107. Petitioner attempted to raise similar grounds to the PCR court, which denied relief and determined that these claims should have been raised on direct appeal. Resp. Exs. 110, 122 at 10. Accordingly, the claims are procedurally defaulted based upon an independent and adequate state rule requiring all trial court errors to be raised on direct appeal. <u>See</u> Resp. Ex. 122 at 8; O.R.S. 138.550(2).

Having elected not to address these grounds for relief in his supporting memorandum, petitioner fails to show cause and prejudice for his procedural default. Neither does he allege actual innocence. Accordingly, petitioner is not entitled to review of grounds two, four and five by this court. These claims are dismissed.

/ / / / /

/ / / / /

**B. Ground Three**

In petitioner's ground three he contends he was denied effective assistance of counsel in violation of his rights under the Sixth Amendment, during his relationship with counsel prior to trial. Specifically, he alleges:

(a) counsel failed to prepare an adequate defense, including the interviewing and subpoenaing of certain witnesses and developing petitioner's theory of self-defense;

(b) counsel failed to move for a continuance when petitioner advised counsel he did not feel he was prepared;

(c) counsel failed to object on behalf of petitioner and under the Americans with Disabilities Act...when the court failed to make accommodations or assign new counsel to represent petitioner, who was illiterate and of limited functioning;

(d) counsel withdrew from representation of petitioner on the day of trial without securing replacement counsel, abandoning petitioner on the day of trial without securing replacement counsel, abandoning petitioner to self-representation; and,

(e) sentencing counsel failed to file a timely motion for a new trial.

Petitioner raised these claims in his PCR petition, and the PCR trial court denied them. Resp. Ex. 122. Petitioner appealed, but since appellate counsel could find no appealable issues in the PCR court's ruling, he submitted a brief in support of petitioner's notice of appeal to "protect the petitioner from a procedural default...". Resp. Ex. 124 at 3. Attached to the brief was petitioner's PCR trial petition. Resp. Ex. 124; cf. State v.

Balfour, 311 Or. 434, 451 (1991)(if client seeks to raise claims
that counsel considers to be frivolous, brief shall contain a
section A- containing a statement of the case and facts, signed by
counsel- and a section B- raising requested claims of error, signed
only by the client).  However, petitioner's PCR trial petition did
not assign error to any of the PCR trial court's rulings, as
required by Oregon Rule of Appellate Procedure 5.45 ("No matter
claimed as error will be considered on appeal unless the claimed
error was preserved in the lower court and is assigned as error in
the opening brief in accordance with this rule, provided that the
appellate court may consider an error of law apparent on the face
of the record.").  Thus, these claims were not fairly presented to
the Oregon Court of Appeals, or the Oregon Supreme Court, which
both denied review.  Resp. Ex. 127.

Petitioner does not dispute that ground three is procedurally
defaulted, nor has he alleged cause and prejudice or actual
innocence to excuse default.  Since petitioner's ground three was
not fairly presented to the state's highest court, he is not
entitled to have this court review it.  This claim is dismissed.

## II.  Merits

### A.  Standard of Review

Under 28 U.S.C. § 2254(d), habeas corpus relief may not be
granted on any claim that was adjudicated on the merits in state
court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003).

A state court decision involves an unreasonable application of clearly established Federal law if it correctly identifies the governing legal standard but unreasonably applies it to the facts of the prisoner's case. Id. at 75. A state-court decision also involves an unreasonable application of Federal law "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. 362, 407 (2000). "An unreasonable application of federal law is something more than an incorrect or even clearly erroneous application; the application must be 'objectively unreasonable.'" Himes v.

Thompson, 336 F.3d 848, 852-53 (9th Cir. 2003)(quoting Lockyer, 538 U.S. at 70); Price v. Vincent, 538 U.S. 634 (2003).

When applying this standard, this court reviews the "last reasoned decision by a state court." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court did not supply a reasoned written or oral decision, this court performs an independent review of the record. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). Still, this court defers to the state court's ultimate decision because it is the state court's decision, not its reasoning, that is judged under the "contrary to" and "unreasonable application" standards. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

**B.    Ground One**

In ground one, petitioner alleges his Sixth Amendment right to the assistance of counsel, and his Fourteenth Amendment Due Process Clause rights were violated when the state trial court allowed appointed counsel to withdraw on the day of trial. He contends that he was forced to proceed *pro se* because the trial court failed to make an appropriate inquiry into the conflict, refused to substitute counsel, and did not obtain a valid waiver of petitioner's right to counsel.

Respondent argues the state court's decision cannot be contrary to, nor an unreasonable application of, clearly

established federal law because the Supreme Court has never confronted the issue presented in this case.

It is well established that a criminal defendant has the right to the effective assistance of counsel "at every step in the proceedings against him." Gideon v. Wainwright, 372 U.S. 335, 345 (1963).  Though the Sixth Amendment does not guarantee the right to a "meaningful attorney-client relationship," Morris v. Slappy, 461 U.S. 1, 3-4 (1983), it does guarantee "an effective advocate for each criminal defendant."  See Wheat v. U.S., 486 U.S. 153, 159 (1988).  A criminal defendant must be able to communicate with his lawyer during key phases of trial preparation, to "provide needed information to his lawyer and to participate in the making of decisions on his own behalf."  See Riggins v. Nevada, 504 U.S. 127, 144 (1992); Geders v. United States, 425 U.S. 80, 91 (1976).

A criminal defendant also has the absolute right to represent himself.  Faretta v. California, 422 U.S. 806 (1975).  A waiver of the right to counsel must be voluntary, knowing and intelligent. Iowa v. Tovar, 541 U.S. 77, 88 (2004).  The determination of whether a defendant has made an intelligent wavier of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.  Johnson v. Zerbst, 304 U.S. 458, 464 (1938); see also Tovar, 541 U.S. at 92.

Although the Supreme Court has never considered the precise circumstances presented in the instant case, "[s]ection 2254(d)(1) permits a federal court to grant habeas relief based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." Lockyer v. Andrade, 538 U.S. 63, 76 (2003). "[W]hen faced with a novel situation we may turn to [Ninth Circuit] precedent, as well as the decisions of other federal courts, in order to determine whether the state decision violates the general principles enunciated by the Supreme Court and is thus contrary to clearly established federal law. See Plumlee v. Sue Del Papa, 426 F.3d 1095, 1104 (9th Cir. 2005)(citing Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004)).

In Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir. 1970), the Ninth Circuit found that to compel one charged with a grievous crime to undergo trial with the assistance of an attorney with whom he has become embroiled in an irreconcilable conflict is to deprive him of the effective assistance of counsel. "Even if [trial] counsel is competent, a serious breakdown in communications can result in an inadequate defense." United States v. Musa, 220 F.3d 1096, 1102 (9th Cir. 2000). This is true even when the breakdown in communication is the result of the defendant's refusal to speak to counsel, "unless the defendant's refusal to cooperate demonstrates 'unreasonable contumacy.'" Daniels v. Woodford, 428

F.3d 1181, 1197-98 (9th Cir. 2005)(citing <u>Brown</u>, 424 F.2d at 1169); <u>see also</u> <u>United States v. Nguyen</u>, 262 F.3d 998, 1003-04 (9th Cir. 2001).

The Sixth Amendment requires "on the record an appropriate inquiry into the grounds for [a motion to substitute counsel] and that the matter be resolved on the merits before the case goes forward." <u>Schell v. Witek</u>, 218 F.3d 1017, 1025 (9th Cir. 2000). The reviewing court must consider: (1) the extent of the conflict; (2) whether the trial judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to substitute counsel. <u>See</u> <u>Daniels</u>, 428 F.3d at 1197-98 (citing <u>United States v. Moore</u>, 159 F.3d 1154, 1158-59, 1159 n. 3 (9th Cir. 1998)).

In <u>Daniels</u>, the Ninth Circuit found the defendant had legitimate reasons for distrusting and refusing to speak to counsel. After multiple substitutions for which the defendant was not responsible, and with three months remaining before trial, the court appointed an inexperienced former prosecutor as lead counsel in a murder case, and counsel then failed to conduct reasonable preparation. <u>Id</u>. at 1199. The trial court did not question Daniels or his counsel after Daniels informed the court of the breakdown in communication. Instead the court told Daniels to discuss the matter with the very counsel he complained he was unable to communicate with. <u>Id</u>. at 1200. In finding that he was

constructively denied counsel, the Ninth Circuit noted that Daniels was "not simply being obstreperous when he refused to communicate with counsel." Id. at 1198; cf. Schell, 218 F.3d at 1026 (stating that a defendant is not entitled to new counsel if the conflict was of his own making).

Similarly, in Plumlee, appointed counsel explained that he was "unable to establish an attorney/client relationship" due to Plumlee's "mistrust with the Public Defender's Office and anyone attached to the Public Defender's Office...". Id. at 1098. Plumlee told the trial court that while he did not question appointed counsel's legal abilities, the lack of trust between them prevented communication. Id. at 1099. After the trial court denied several motions for substitute counsel, Plumlee moved to represent himself, stating, "I don't have a choice, Your Honor." Id. at 1099.

The Ninth Circuit found that Plumlee's decision to represent himself was not voluntary. By refusing to appoint substitute counsel the trial court unreasonably applied the Supreme Court's clearly established "right-to-counsel jurisprudence," according to the Court. It reasoned that Plumlee's "objectively reasonable" suspicions about appointed counsel's loyalty demonstrated that "the conflict was not of [the defendant's] own making," and thus Plumlee's reasonable belief that the public defender's office was leaking information to another suspect in the case, and to the

District Attorney, "led to an obvious and extreme conflict that constructively deprived Plumlee of any meaningful representation as the Supreme Court has understood that term." Id. at 1107-1108.

Other circuits agree that a trial court must appoint substitute counsel when faced with an irreconcilable conflict or a complete breakdown in communication between a criminal defendant and his attorney.[1]

Applying the test adopted by the Ninth Circuit in Schell and restated in Daniels and Plumlee to the facts of this case, I find that the motions to substitute counsel were timely, but the trial

_____

[1] See United States v. Mullen, 32 F. 3d 891, 897 (4th Cir. 1994) (holding that the trial court abused its discretion in refusing to appoint substitute counsel where "there was a total breakdown in communication between [counsel and client]" that "ma[de] an adequate defense unlikely"); Smith v. Lockhart, 923 F. 2d 1314, 1320 (8th Cir. 1991) (explaining that a defendant is entitled to a substitution of counsel where there exists "a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant"); United States v. Padilla, 819 F. 2d 952, 955 (10th Cir. 1987) (same); Wilson v. Mintzes, 761 F. 2d 275, 280 (6th Cir. 1985) (same); United States v. Welty, 674 F. 2d 185, 188 (3d Cir. 1982) (same); United States v. Young, 482 F. 2d 993, 995 (5th Cir. 1973) (same); United States v. Calabro, 467 F. 2d 973, 986 (2d Cir. 1972) (same); see also United States v. Zillges, 978 F. 2d 369, 372 (7th Cir. 1992) (in evaluating motion to substitute counsel, court must consider several factors, including "whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense"); United States v. Allen, 789 F. 2d 90, 92 (1st Cir. 1986) (same); cf. United States v. Graham, 91 F. 3d 213, 221 (D.C.Cir. 1996) ("A defendant [has] the right to effective representation by appointed counsel, and this right may be endangered if the attorney-client relationship is bad enough.").

court failed to adequately inquire into the extent of the conflict, therefore I am unable to determine from the record whether petitioner's belief that counsel was not acting in his best interest was objectively reasonable. Therefore, I must find that petitioner was denied effective assistance of counsel by the trial court's refusal to grant a substitution. Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000).

The record reveals that the conflict probably arose over petitioner's dissatisfaction with counsel's advice regarding pretrial release, plea negotiations, trial strategy, and procedural matters. Many of these decisions were committed to the judgment of counsel. See Brookhart v. Janis, 384 U.S. 1, 8 (1966) ("[A] lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval."). The record may be read to indicate that petitioner had difficulty submitting to counsel's tactical decisions and accepting counsels's advice. Resp. Ex. 102 at 8. In an important particular, although Mr. Fishback himself moved to withdraw at each substitution hearing, he did so at petitioner's request, not because he himself perceived a total breakdown in communication. Cf. Plumlee, 426 F.3d at 1099(attorney corroborated defendant's claim that relationship had completely broken down). Mr. Fishback admitted he had a "communication problem" with petitioner, but he continued to make efforts to garner petitioner's assistance in

preparing his defense.  Resp. Ex. 102 at 21.  The record also indicates that petitioner continued to communicate with counsel, albeit poorly.  For instance, on July 5, 1996, counsel asked the court to grant a short continuance because petitioner requested a gun expert, and counsel wanted to try to convince petitioner to waive jury trial, or in the alternative, to dress in civilian clothing for trial.  Petitioner agreed that if the court granted a continuance he would sit down with counsel over the weekend, stating, "Yeah, I talk to you, Ron.  You sound pretty good today," and, "I got to prepare him."  <u>Id</u>. at 25.

Nevertheless, the record can also be read to convey that petitioner possessed a reasonable belief, based on his experiences with Mr. Fishback, that counsel was working to undermine his defense.  To the extent the court inquired into the basis for petitioner's objection to Mr. Fishback's representation, the inquiry was not adequate for me to determine if, as the government contends, the objection was due to petitioner's "obstinance or delaying tactics," in which case petitioner would not have been entitled to a new attorney under <u>Plumlee</u>, or if petitioner reasonably believed that Mr. Fishback was trying to "put him down the tube" as he stated on the day of trial, however inaccurate that belief may have been.  <u>Id</u>. at 1106-08.  Mindful of the challenges faced by circuit court judges, I note that the inadequacy of the inquiry was largely due to the fact that a different judge presided

over each substitution hearing. This prevented any one of them from having a full knowledge of what had gone before the other. Therefore, none of them was able to adequately inquire into the nature of the conflict between petitioner and Mr. Fishback sufficient to determine if, as petitioner contends, it was truly irreconcilable.

At the first substitution hearing, April 10, 1996, Judge Cooper did not inquire on the record into the nature of the conflict. Resp. Ex. 102 at 5-7. After Mr. Fishback approached the bench, Judge Cooper denied the motion to substitute counsel, but stated, "I believe it's serious enough where it should go before the criminal presiding judge, William Keys." Resp. Ex. 102 at 7. Yet there is no indication in the record that Judge Keys reviewed the matter at that time.

At the second substitution hearing, May 2, 1996, petitioner told Judge Amiton that he wanted substitute counsel because, "I feel that I'm not being represented too good. Like I just – I went to court on the 24th and there was something being waived without me being there." Resp. Ex. 104 at 2. Judge Amiton determined that the state had been granted a continuance on that date, and that petitioner had not yet received copies of any of the paperwork in his case. Id. at 5. Mr. Fishback indicated that his trial assistant had sent the paperwork to the jail the previous day. Id. Petitioner also expressed confusion about not being released,

pending trial, to a drug rehabilitation facility.  <u>Id</u>. at 6.  Mr.
Fishback told Judge Amiton that petitioner was not a priority
candidate due to the nature of  his crime.  <u>Id</u>. at 7-8.  Judge
Amiton attempted to explain that to petitioner, but petitioner
continued to state that he did not believe Mr. Fishback had his
best interest in mind.  Nevertheless, Judge Amiton denied the
motion to withdraw, stating that Mr. Fishback was one of the best
lawyers in town.  <u>Id</u>. at 11.

Although Judge Amiton inquired into petitioner's reasons for
wanting substitute counsel and attempted to allay his concerns with
rational explanations for counsel's actions, he did not ask
petitioner if he would be able to overcome his feelings in order to
cooperate with counsel.  Instead he admonished petitioner to do so,
indicating that Mr. Fishback was one of the top lawyers in town.
Yet, if petitioner was unable to communicate with Mr. Fishback
because he reasonably believed that Mr. Fishback was not on his
side, petitioner would still have been denied effective assistance
of counsel even if Mr. Fishback were the best defense attorney who
ever lived.

Judge Keys presided over the third substitution hearing, June
27, 1996.  Resp. Ex. 102 at 8-19.  He did not ask petitioner why he
objected to Mr. Fishback's representation.  To the contrary, every
time petitioner attempted to speak Judge Keys cut him off, even
going so far as to tell petitioner to keep his mouth shut and do

what he was told. Id. at 18. Mr. Fishback said that he and petitioner had not "gotten along at least in the sense that when he gets in my face I won't talk to him." Id. at 8. He said petitioner accused him of "being with the district attorney's office." Id. Judge Keys told Mr. Fishback he was not expected to "take any abuse" from petitioner. Id. He then read petitioner a notice of his right to representation, and he read the indictment and explained the maximum sentence and fine. Id. at 9-12. He told petitioner, "if you end up not being able to work with [counsel]...I'm not going to give you a new attorney; you're going to end up representing yourself." Id. at 15.

Thus, the hearing before Judge Keys did not further the trial court's inquiry into the nature of the conflict between petitioner and Mr. Fishback. To the contrary, Judge Keys reapplied Judge Amiton's inapposite ruling that petitioner was not entitled to substitute counsel because current counsel was a very competent attorney. This holding was further compounded the day of trial, when Judge Kantor deferred to Judge Keys to deny petitioner substitute counsel for the fourth and final time.

On the morning of July 8, 1996, Mr. Fishback once again moved to withdraw. He stated that petitioner had just threatened him, and that he felt "very uncomfortable." Resp. Ex. 102 at 32. The prosecutor indicated that he witnessed the "threat" and he echoed the government's present position that petitioner was attempting to

go "through the back door to get what he certainly can't do through the front door." Id. at. 34. Yet petitioner maintained that he did not mean to threaten Mr. Fishback, but that he was unable to communicate with him.

Judge Kantor recessed to talk with Judge Keys about petitioner's case apparently because Judge Keys had final say-so on criminal rulings. Id. at 37. When he returned he found that "the kind of threat that would justify the granting of a motion to withdraw was established here." Id. at 40. Therefore Judge Kantor granted Mr. Fishback's motion to withdraw, but denied petitioner substitute counsel stating, "Judge Keys made it very clear that he discussed with you, and went over with you what would happen if you caused a problem that would result in a lawyer not being on your case." Id. at 41. Petitioner agreed, stating, "Yes, sir. Sound like I be representing my own self." Id.

While it could be said that Judge Kantor inquired into whether petitioner had threatened Mr. Fishback, not unlike the previous inquiries this one did not delve into petitioner's contentions about the breakdown in attorney-client communications. Assuming without deciding that petitioner did threaten Mr. Fishback, more than any other single fact in the record, to me this evidences that the lines of communication between petitioner and Mr. Fishback were irretrievably broken. No self-interested person, as I find petitioner to be, would threaten his attorney on the morning of

trial absent a total breakdown in communication. Unless, of course he was deliberately attempting to manufacture a conflict to obstruct justice or delay proceedings. A detailed examination of the record indicates that to some extent the defendant was obstreperous and brought much of the problem upon himself. However, the record also suggests that petitioner genuinely believed Mr. Fishback did not have his best interests at heart. Since the trial court failed to make an appropriate inquiry on the record to resolve this uncertainty, I must find that petitioner was denied effective assistance of counsel in violation of his Sixth Amendment right when the trial court denied his motion for substitute counsel and he was forced to represent himself at trial.

## CONCLUSION

Based on the foregoing, petitioner's amended habeas corpus petition (#10) is GRANTED. The parties shall submit proposed judgments to the court by March 15, 2006.

IT IS SO ORDERED.

DATED this _21 day of February, 2006.


                                    __/s/ Malcolm F. Marsh_____
                                    Malcolm F. Marsh
                                    United States District Court Judge